IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

vs.                                     Case Nos.:   3:08cr22/LAC/EMT
                                                     3:13cv577/LAC/EMT

WARREN K. MUMPOWER

---

## REPORT AND RECOMMENDATION

This matter came before the court on Defendant Warren K. Mumpower's "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" and memorandum in support thereof (ECF No. 1040).  The Government responded in opposition (ECF No. 1085), and Defendant filed a reply (ECF No. 1116).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## BACKGROUND

Defendant and thirteen others were charged in a forty-count superseding indictment with various charges related to the international distribution of child pornography via the internet (ECF No. 78; Defendant Mumpower charged in Counts 1, 2, 12, 22, 35, 40).   After a six-day jury trial, Defendant was convicted of engaging in a child exploitation enterprise ("CEE"), in violation of 18 U.S.C. § 2252A(g) (Count 1); conspiring to advertise, transport/ship, receive, and possess child pornography, and to obstruct an official proceeding, in violation of 18 U.S.C. §§ 371, 1512(k), 2251(e), and 2252A(b) (Count 2); receiving and attempting to child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2 (Count 35); obstructing justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 40); advertising the exchange of child pornography, in violation of 18 U.S.C. § 2251(d)(1) and (2) (Count 12); and knowingly transporting and shipping child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and 2 (Count 22) (ECF Nos. 78, 480, 793).   The court sentenced Defendant to a term of life imprisonment as to Count 1; 600 months as to Counts 2 and 12; 480 months as to Counts 22 and 35; and 240 months as to Count 40, with each count to run concurrently with the others (ECF No. 793 at 3).   Defendant appealed, and the Eleventh Circuit vacated each Defendant's convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40.   United States v.

<u>McGarity</u>, 669 F.3d 1218, 1229 (11th Cir. 2012).   The opinion stated no fewer than five times that the evidence against the Defendants, which included their own confessions,[1] was nothing short of "overwhelming."   *Id.* at 1242, 1243, 1246, 1263. The Supreme Court denied certiorari (ECF No. 931), and on August 20, 2012, the district court entered a second amended judgment sentencing Defendant to a term of life imprisonment on Count 1, 600 months on Count 12, and 480 months as to Counts 22 and 35, to run concurrently (ECF No. 921).   Defendant timely filed the instant motion to vacate, raising 79 claims for relief (ECF Nos. 1040).

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of trial and sentencing, the Pre-Sentence Investigation Report ("PSR"), the second amended judgment and statement of reasons, and the Eleventh Circuit's opinion on appeal (ECF Nos. 78, 720–725, 812, 903, 921–922, 1194, 1207).   Therefore, the undersigned will provide an abbreviated recitation of the facts here, and relay additional specific facts only as needed for resolution of claims raised in the instant motion.

As set forth in the Eleventh Circuit's opinion, in 2005 an informant notified Constable Brenden Power of the Queensland, Australia Police Service of the

---

[1] Defendant denies in his reply memorandum that actually confessed and appears to profess his innocence of the charges in this case (ECF No. 1116 at 11).

existence of a computer ring of child pornography users that operated through internet newsgroups. The informant revealed which newsgroups the ring was using, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring. Constable Power began monitoring the ring and learned of the sophisticated nature of the ring, including controls on memberships and complicated methods of communicating and posting using encryption. Members uploaded scrambled and encrypted binary files in one newsgroup, then would place a message in another newsgroup advising that the upload was there with instructions. Other members could then download the encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download the files containing child pornography. The group masked headings when posting files and messages and frequently changed nicknames as a further means of avoiding detection.

After realizing that the ring was operating internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit. The joint investigation continued for another year, during which time law enforcement was able to identify 22 members of the child pornography ring, 14 of whom were people of special interest. Between August 31, 2006 and December 15, 2007, law enforcement detected the

upload of over 400,000 images and more than 1,000 videos by ring members.   Not all of the images and videos portrayed child pornography, but many of them depicted the sexual abuse of minors in graphic and grotesque detail.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the Defendants in this case.   All Defendants except for one confessed his involvement with child pornography and with the child pornography ring in question.   Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of all but one of the Defendants, including Defendant Mumpower, and after being taken into custody and housed together six of the Defendants, including Defendant Mumpower admitted to the others his membership in the child pornography ring. United States v. McGarity, 669 F.3d 1218, 1229–31 (11th Cir. 2012).

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by

different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234−35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own

conduct." <u>Lynn</u>, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See* <u>Nyhuis</u>, 211 F.3d at 1344.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015); <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   <u>Gordon</u>, 518 F.3d at 1301 (citing <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.   *See* <u>Hernandez v. United States</u>, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* <u>Winthrop−Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   <u>Lynn</u>, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

In this case, the Government argues that nearly all of Defendant's substantive claims are procedurally barred or are otherwise not properly before the court on collateral review.   Taken as stand-alone claims, the Government's assertions are largely well-taken.     However, Defendant also raises claims of ineffective assistance of both trial and appellate counsel in his motion, which may defeat the procedural bar.    In the interest of brevity, the court will not reiterate the standard for, or engage in a discussion of, the procedural bar on each of Defendant's substantive claims, recognizing that absent the ineffective assistance of counsel claim, they are likely not cognizable on collateral review.

    1.   <u>Infirmity of Superseding Indictment</u>

In Grounds 1 and 19, Defendant challenges different aspects of the superseding indictment.    First, Defendant claims that the superseding indictment is faulty as it fails to state with particularity the cause and circumstances of the offense conduct or the identity of the co-Defendants, such that he was unable to prepare a meaningful defense.   Defendant acknowledges that the defense filed two motions for Bills of Particulars (ECF Nos. 192, 321), which he adopted (ECF No. 362), and that the motions were denied (ECF No. 377).   Defendant's disagreement with the

district court's decision and his desire to relitigate this issue herein does not entitle him to relief.

In Ground 19, he claims that Count 2 was a duplicitous count as applied.   In light of the fact that each Defendant's conviction on Count 2 was vacated on appeal, this claim is moot.

### 2.   Infirmity of Venue

Defendant contends in Ground 6 that the Government failed to connect the substantive counts to the Northern District of Florida or request a venue jury instruction on all counts, and thus failed to establish the court's jurisdiction.   He argues that Counts 12, 22, 35, and 40 charged him with committing substantive offenses at his residence in Spokane, Washington.

Count 1 in this case charged Defendant with conspiracy.   "In a conspiracy case, venue is proper in any district where an overt act was committed in furtherance of the conspiracy."   United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990) (citing Hyde v. United States, 225 U.S. 347, 363 (1912); United States v. Long, 866 F.2d 402, 407 (11th Cir. 1989)); United States v. Bradley, 644 F.3d 1213, 1254 (11th Cir. 2011).   The overt act need not be committed by a defendant in the case; the acts of accomplices and unindicted co-conspirators can also expose the defendant to jurisdiction.   See United States v. Matthews, 168 F.3d 1234, 1246 (11th Cir. 1999).

Furthermore, a defendant who is charged as a conspirator is vicariously responsible for the acts of any co-conspirator taken in furtherance of the conspiracy as well as foreseeable consequences thereof.   Bradley, 644 F.3d at 1254–55; Pinkerton v. United States, 328 U.S. 640, 647–48 (1946); United States v. Silvestri, 409 F.3d 1311, 1335 (11th Cir. 2005).   Where an out-of-district defendant aided or abetted a principal who commits a substantive crime in the district of prosecution, venue lies in the district of prosecution as to both the aider and abetter and the principal. United States v. Long, 866 F.2d 402, 406–07 (11th Cir. 1989).   Finally, offenses begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which such offense was begun, continued, or completed.   18 U.S.C. § 3237(a); United States v. McCulley, 673 F.2d 346, 350 (11th Cir. 1982).   Thus, acts by Defendant or his co-conspirators within the Northern District of Florida would be sufficient to establish jurisdiction in this district. As noted by the Government, there was evidence at trial linking Defendant to co-Defendant James Freeman in the Northern District of Florida, to wit, items that were forensically recovered from Defendant's digital media and were electronically linked to co-Defendant and Florida resident James Freeman's postings

and one of his screen names (s*ee* ECF No. 1085, Exh. C; Gov. Trial Exhibits WM-29D, 29E).

    3.  <u>Insufficient Evidence at Trial and Variance from Indictment</u>

    Defendant raises nine claims related to sufficiency of the evidence and/or variance from the indictment.    The claims raised in Grounds 18, 20, and 24, which relate to Counts 2 and 40 of the superseding indictment are, of course, moot, as Defendant's convictions on these counts were overturned on appeal.    <u>McGarity</u>, 669 F.3d at 1229.    In Grounds 8, 9, 13, and 15, Defendant claims that the evidence was insufficient to sustain his conviction on Counts 12, 35, and 22; in Ground 16, he further asserts that there was in improper variance with respect to Count 22 of the indictment; and in Ground 22, he asserts that there was insufficient evidence to support his conviction on Count 1.

    Even if these claims were not procedurally barred, they are without merit. To the extent Defendant suggests that the Government was limited in its presentation of evidence at trial to only the evidence it presented to the grand jury, the assertion is unfounded.    As to Defendant's challenges to the sufficiency of the evidence, the Government notes that it presented a wealth of trial evidence against Defendant regarding his group postings and his confession, which is also set forth in the PSR (ECF No. 1207 at 18–19), and forensic evidence in his possession that directly linked

him to the criminal enterprise.   As recognized by the Eleventh Circuit on appeal,

the overwhelming evidence at trial supported his guilt of these charges.

Defendant's suggestion that a conviction violates his First Amendment rights is

without merit, as child pornography is not entitled to First Amendment protection.

*See* New York v. Ferber, 458 U.S. 747 (1982); Ashcroft v. The Free Speech

Coalition, 535 U.S. 234 (2002).   Thus, even if cognizable, no relief is warranted on

any of these claims.

### 4.  Improper Testimony/Evidence Utilized at Trial

In Grounds 11, 34 through 41, and 44, Defendant raises challenges to the

evidence or testimony adduced at trial, arguing that evidence was improperly

introduced, and assailing the credibility of the testimony presented.   In light of the

procedural posture of this case, such arguments are not properly before the court.

First, Defendant contends in Ground 11 that Special Agent Cordero committed

perjury when she stated that a particular post had been made by him.   An error of

fact during a witness's testimony does not rise to the level of a constitutional

violation.   He further asserts that Agent Cordero and the Government knew beyond

a doubt within days of his arrest that co-Defendant Berger was not actually the

person with the online identity "Box of Rocks," but nonetheless presented testimony

to the contrary (ECF No. 1040-1 at 27–28).   The Government, in turn, asserts that

Defendant is knowingly misleading the court.   In any event Defendant's bare assertion is not conclusive proof of a constitutional violation.

In Ground 34, Defendant maintains that the introduction of subpoena returns as business records violated the Fifth and Sixth Amendments.   Defendant refers to subpoenas to Giganews, Inc., a news service provider used by him and others.   He asserts that the subpoenas required that Giganews provide account information and logs for various message holders, and that production of the requested information required decryption of a coded string placed into the header by the server.   As a result of the manner in which the records were introduced, Defendant contends that he was unable to cross-examine the individual who decrypted the records and establish the authenticity of the information obtained after decryption.   It appears that the records in question were the subject of a pre-trial motion in limine.   Only co-Defendant Freeman objected to their admission. The court granted the Government's motion in limine before trial and determined that these records would be admissible (ECF Nos. 393, 440).   Furthermore, a challenge on appeal to the admissibility of these records was rejected as meritless and not warranting

discussion.   <u>McGarity</u>, 669 F.3d at 1229 n.6.   Defendant has not shown a constitutional violation.

Grounds 35 and 36 relate to the Government's alleged solicitation of incredible testimony as to facts the witnesses could not have known to be true and were thus either perjury or impermissible hearsay.   Constable Power and Special Agent Cordero were subject to cross-examination at trial.   If they, or any other witness, testified in error about some aspect of the operation of the conspiracy, this error cannot, without more, be attributed to nefarious intent on the part of the Government, and does not entitle Defendant to § 2255 relief.   (*See* ECF No. 1040 at 34–35, citing alleged testimonial errors).

Defendant contends in Ground 37 that the introduction of the prosecutor's work-product as "evidence" in the case was prejudicial to him.   Specifically he complains that charts listing nicknames and groups in the conspiracy and summarizing evidence should not have been admitted.   The Government argues that summary charts are admissible pursuant to Federal Rule of Evidence 1006, although Defendant correctly notes that this rule provides for the use of summaries to "prove the content of voluminous writings, recordings or photographs that cannot be conveniently examined in court."   Still, the court does not find that Defendant has shown that the admission of the summary exhibits was in violation of his

constitutional rights or somehow altered the outcome of the proceedings against him. *See, e.g.,* United States v. Francis, 131 F.3d 1452, 1457–59 (11th Cir. 1997) (discussing approved use of summaries of evidence).

In Ground 38, Defendant complains that when Special Agent Cordero testified about items seized from Defendant, she improperly testified as to a legal conclusion, that many of the items seized were "child pornography" (*see* ECF No. 723 at 155, 158; ECF No. 724 at 24, 25). The Government notes the use of the term "child pornography" was subject to cross-examination, closing argument, and instructions by the court. The jurors were instructed on the definition of child pornography (ECF No. 469), and were thus able to draw their own conclusion about the exhibits they viewed. Perhaps more significantly, the undersigned finds that the brief references complained of did not render the proceedings constitutionally infirm in light of the overwhelming evidence against Defendant, including actual video and photographic evidence.

In Ground 39, Defendant asserts that the Government's use of a large screen to broadcast the images and videos to the court and the jury violated his rights. He asserts that the images and videos were highly inflammatory and prejudicial, and maintains that the Defendants had stipulated that they contained child pornography. The Government correctly notes that the screen used at trial was the district court's

evidence presentation system, and that there was no other screen in the courtroom
that would have allowed the jury to see the evidence.   Although Defendant claims
that the Government had the option to use still photos, presentation of the video
evidence obviously required a different form of presentation.   Binding Eleventh
Circuit precedent holds that the introduction into evidence of images containing
child pornography is proper, notwithstanding a defendant's stipulation to that fact.
United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010).   A criminal
defendant "may not stipulate or admit his way out of the full evidentiary force of the
case as the Government chooses to present it."   Old Chief v. United States, 519 U.S.
172, 186–87 (1997).   There was no constitutional error in the admission of the video
and still evidence, and the Government presented only a fraction of the available
images.   Furthermore, as to Ground 44—a complaint regarding the presentation of
prejudicial evidence regarding "known victims"—this evidence was necessary
because many Defendants did not want to stipulate that the images and videos were
of "real" children (ECF No. 763 at 5; ECF No. 724 at 35).

  In Ground 40, Defendant argues that his right to a fair trial was tainted by the
prejudicial spillover from the introduction of evidence against his co-Defendants.
It is a well-settled principle that it is preferable for persons who are charged together
to also be tried together, particularly in conspiracy cases.   United States v. Green,

818 F.3d 1258, 1282 (11th Cir. 2016) (quoting United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990)); United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007) (citing Zafiro v. United States, 506 U.S. 534, 537–38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together")); United States v. Hill, 643 F.3d 807 (11th Cir. 2011).   Cautionary instructions to the jury to consider the evidence separately, such as the one given in this case, are presumed to guard against prejudice.   United States v. Francis, 131 F.3d 1452, 1459 (11th Cir. 1997) (quoting United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991)); Zafiro, 506 U.S. at 539; United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005).   Severance is highly disfavored.   Even in a case when two co-conspirators committed murder, the Eleventh Circuit has found that severance is not warranted.   *See* United States v. Lopez, 649 F.3d 1222, 1233–36 (11th Cir. 2011).   Thus, while Defendant would have preferred that his trial be severed from that of his co-Defendants, he has not shown any constitutional basis for relief.

In a related claim, Defendant asserts in Ground 41 that the presentation of what he characterizes as "inflammatory personal evidence" against two co-Defendants violated his constitutional rights.   He identifies three pieces of evidence. The first was a CD containing child pornography that included what purported to be

a personal note from the minor victim depicted in the images and videos on the CD addressed to co-Defendant Castleman's daughter, indicating that it was okay for her to "play together" like the victim and her father (ECF No. 721 at 286).   Second, Defendant complains that the Government solicited testimony from Special Agent Wilder that a co-Defendant had ties to a known Italian child pornography producer, Sergio Marzola, who had no ties to the conspirators' group (ECF No. 722 at 68). The third item is a typewritten confession by co-Defendant McGarity in which he admits that he molested his daughter for several years and had over 50,000 images of child pornography on his computer (ECF No. 723 at 232–33).

It is certainly true that in a multi-defendant trial, evidence may be introduced against one defendant that is not probative of the guilt of another defendant. The Government is not barred by this fact from introducing the evidence at all.   With respect to two of the specific items Defendant challenges, the appellate court found a challenge to the admission of the CD to be meritless and not warranting discussion; the court also ruled that the confession was properly admitted.   McGarity, 669 F.3d at 1229 n.6, 1243–45.   The reference to a co-Defendant's connection to an individual who produced both "child modeling" and "child pornography" (ECF No. 722 at 68) neither permeated the trial nor violated Defendant's constitutional rights.

Case 3:08-cr-00022-LC-EMT   Document 1208   Filed 10/20/16   Page 20 of 59

In sum, Defendant has not shown that he is entitled to § 2255 relief based on his claims that improper testimony or evidence was adduced at trial.

5. Failure to Preserve/Produce Evidence

Defendant has raised five claims regarding the Government's alleged failure to preserve or produce relevant or exculpatory evidence to the defense. The Supreme Court held in Brady v. Maryland, 373 U.S. 83, 87 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." In order to obtain relief on a Brady claim, Defendant must establish that: (1) the Government possessed evidence favorable to him; (2) he did not possess the evidence and could not have obtained it with reasonable diligence; (3) the Government suppressed the favorable evidence; and (4) the evidence was material. Ponticelli v. Secretary, Florida Department of Corrections, 690 F.3d 1271, 1292 (11th Cir. 2012) (citation omitted). Evidence is "material" if there is a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome, that a different outcome would have resulted if the Government had disclosed the evidence. *Id*. (citation omitted).

The Government notes that Constable Power downloaded all material relevant to the investigation and maintains that the Government neither destroyed nor failed

to download any exculpatory evidence (ECF No. 720 at 52–146; ECF No. 721 at 180–96).   The attachments to the Government's brief support its assertion that this information was provided directly to the defense or that the defense had the opportunity to review it (ECF No. 1085, Exh. B).[2]   Furthermore, the evidence in question was created by the Defendants in a public forum.   Defendant's assertion that the manner in which the evidence was preserved prevented him from presenting exculpatory evidence that others posted the messages is unsupported, and he is not entitled to relief on Ground 26.

In his reply, Defendant cites the absence of "child modeling images" in the discovery he was provided as proof that the Government did not provide him with "exculpatory" evidence.   Defendant argues that several of the Government's trial witnesses testified that over half the images "traded" by the alleged conspirators were legal child modeling images.   He fails to explain how the presence of photos that were not actual child pornography somehow excuses his liability for those that

---

[2] Defendant observes that the Government's inclusion as an exhibit to its response a request to have co-Defendant McGarity transported to the office of the United States Attorney, not only does not prove that it did the same for him, but also suggests that his attorney was constitutionally ineffective for failing to arrange same (*see* ECF No. 1085 Exh. D; ECF No. 1116 at 27).   Defendant does not claim he requested and was denied such a subpoena, and he admits that he and the other co-Defendants were provided a laptop computer to jointly review discovery (ECF No. 1040 at 31).

were.   Furthermore, the jury was made aware of their existence through testimony presented at trial.

In Ground 27, Defendant contends that the Government did not provide him with the "best evidence" as required by Fed. R. Evid. 1002 because he was provided copies of decrypted messages rather than original encrypted messages.   This rule, which provides that an original writing, recording, or photograph is required in order to prove its content, governs the type of evidence admissible at trial.   Defendant's citation to this rule is inapposite as pertaining to discovery.

The Defendant claims in Grounds 30 and 66 that the Government failed to make available to him videos and images that would be used in its case against him. He asserts that the court ordered the Government to show the defense all the images and videos they wished to see.   Special Agent Cordero showed Defendant only a single DVD, WM-31, although there were other images and videos available, including some that contained "legal content" and were thus exculpatory, in violation of his Brady rights.   As noted above, the fact that "legal" images existed in addition to the "illegal" images is not in and of itself exculpatory.

In Ground 72, Defendant contends that Special Agent Cordero "deliberately tampered with exculpatory evidence attached to an FD-302 report used as the basis of paragraphs 61 and 62 [of his PSR]" (*see* ECF No. 1040 at 53; ECF No. 1207).

Defendant asserts that because the appendices to the report are missing the headers of the conversation stream, he was unable to show that he had no part in the conversation that took place therein.   Defendant cannot show that this information had an impact on his conviction and sentence in this case, and he is not entitled to relief.

6. <u>Procurement of Indictment</u>

In Grounds 28 and 29, Defendant complains about irregularities in the indictment process.   First he claims that the Government intentionally and unfairly delayed his indictment, resulting in the loss of relevant evidence.   He also asserts that the Government improperly engaged in forum shopping by presenting its case in the Northern District of Florida after a grand jury in Maryland did not return the charges sought by the Government.

To the extent Defendant asserts that prosecution was improper in this district, he is mistaken.   As noted by the Government in its response, this was a global operation.   Dozens of conspirators were arrested on February 29, 2008, around the world.   Clearly, the case was much more far reaching than just this one Defendant, and the Government had to choose the best time and location for prosecuting its case. Defendant's speculation about the reason for the delay ("the government delayed as long as possible in the hopes that some group member would commit some heinous

crime against a child and post it to the group") (ECF No. 1048 at 10–11) is nothing more than rank speculation and does not establish that his rights were intentionally and purposefully violated by a delay.

As noted above, in a case involving a conspiracy venue is proper "in any district where an overt act was committed in furtherance of the conspiracy.   United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990); United States v. Matthews, 168 F.3d 1234, 1246 (11th Cir. 1999); 18 U.S.C. § 3237(a); *see also* United States v. Bagnell, 679 F.2d 826 (11th Cir. 1982) (Government may prosecute pornography dealers in any district into which the material is sent); United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009) (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 279–81 (1999)).   The Government's decision to procure the indictment in this district in lieu of the district where Defendant resided was not constitutionally improper, and Defendant has not shown that he is entitled to relief.

7.  Improper Use of Government Witness/Potential Defense Witness

In Ground 32, Defendant contends that the Government improperly used a confidential informant to obtain defense trial strategy.   He asserts that in mid-2008, co-Defendant John Mosman and his counsel "covertly arranged a plea deal" whereby Mosman would remain incarcerated in the same county jail dormitory as the other Defendants and participate in meetings and discussions regarding trial

strategies.   Mosman also was allegedly able to access the laptop computer the co-Defendants had been provided to jointly review discovery, and at one point deleted large amounts of discovery in an attempt to disrupt the defense efforts.   Defendant claims that Mosman took notes, passing them on to his lawyer and the prosecutor. As seeming "proof" of the covert arrangement, Defendant cites the fact that Mosman did not enter his formal plea until the final deadline for doing so, and thereafter was transferred to another facility.   As further "proof," Defendant notes that a trial that the Government had claimed would take four weeks was completed in five days. Defendant's bald assertions do not prove his claim.   Furthermore, the Government notes in its response, as this court is well aware, the Office of the United States Attorney for this district does not engage in plea bargaining. The Government explained at a pre-trial conference that it expected the trial to be shorter than anticipated in part because fewer Defendants were proceeding to trial, but also because it had culled through the evidence (*see* ECF No. 763 at 16; *see also* ECF No. 720 at 10).   Defendant's arguments are based on rank speculation without any supporting evidence.

In Ground 33, Defendant contends that the Government improperly interfered with a potential defense witness, co-Defendant Micheal Berger, who pleaded guilty in this case.   Defendant contends that once he got to know Berger, whom the

Government had identified as "Box of Rocks," he realized that Berger was not the person he had known by that online name for several years.   He asserts that after the Government came to the same conclusion, it offered Berger a plea deal to prevent the jury from hearing that there were possible hacked accounts.   Defendant sought to have Berger testify regarding his online activities and the apparent hacking and identity theft.   According to Defendant, the Government approached both his attorney and counsel for Berger and warned that if Berger testified, evidence would be turned over to Berger's home state and the Government would "see to it that Berger was indicted on the unrelated allegation of video voyeurism" from ten years prior (ECF No. 1040 at 32).   Defendant notes that the Government allowed Berger to plead guilty to a single "unrelated" count of receipt of child pornography.

Defendant's assertions are, again, factually unsupported.   The Government appended to its response a letter from Mr. Berger's attorney regarding his conversations with Defendant Mumpower about the conspiracy, and Berger's desire to cooperate with the Government in order to receive a Rule 35 motion (ECF No. 1085, Exh. G).   The record reflects that on October 2, 2008, Berger, as part of the instant conspiracy, pleaded guilty to Count 26 of the Superseding Indictment, not an "unrelated" charge (*see* ECF Nos. 288–289, 855-2).   The transcript of Berger's rearraignment also reflects that pursuant to Berger's plea the Government agreed

that it would not prosecute him in the District of Maryland for a crime committed in that district (ECF No. 855 at 83–84).   Berger was sentenced on December 16, 2008, before trial began in Defendant's case (ECF Nos. 386, 387).   Thus, there was nothing preventing the defense from calling him to testify at trial, had it chosen to do so.   Berger's motivation to earn a Rule 35 motion, rather than impropriety on the part of the Government might have prevented him from being a defense witness.

8.   <u>Infirmity of Jury</u>

In Grounds 42, 43, and 54, Defendant raises claims regarding the alleged infirmity of the jury venire and the selection process, and alludes to district court error in "tainting" the jury pool.

Defendant claims in Ground 42 that the jury venire was inadequate due to its size, noting that only 49 individuals appeared.   He also complains that because a majority of the venire appeared to self-identify as Christians, which Defendant is not, the jury was not a "jury of his peers."   He asserts in his reply that his peers are "far more cosmopolitan than a pool that can be found within the Pensacola Division" (ECF No. 1116 at 35).   It is well settled that "defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinct groups in the community and thus fail to be reasonably representative."   <u>United States v. Green</u>,

742 F.2d 609, 611 (11th Cir. 1984).   A jury pool must represent a cross-section of the community.   Taylor v. Lousiana, 419 U.S. 522, 528 (1975).   Under the Jury Selection and Service Act, the relevant community from which a jury is to be selected is "the district or division wherein the court convenes."   28 U.S.C. § 1861. Defendant has not shown constitutional error in the composition of the jury venire in this case.

In Ground 43, Defendant claims that the defense was "forced to use peremptory strikes in order to excuse jurors who should have been dismissed for cause."   He claims that the court was reluctant to, or refused to, dismiss jurors for cause due to the small size of the jury pool.   In Ground 54, Defendant claims that the district court abused its discretion when it sat an inadequate number of jurors in the venire and consequently refused to dismiss jurors for cause.   He also claims that the court interjected its own religious beliefs into the trial, thus tainting the jury pool.

Due process requires that "the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."   Morgan v. Illinois, 504 U.S. 719, 727 (1992).   The seating of any juror who should have been dismissed for cause requires reversal.   Skilling v. United States, 561 U.S. 358, 395–96 (2010) (citing United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000)).   Defendant identifies four jurors that he believes should have been stricken for cause:   juror #2, whose

wife was an elementary school principal; juror #23, who was a kindergarten teacher who expressed a bias against the Defendants; juror #25, who stated that she had been molested as a child by a stranger; and juror #33, who stated that the daughters of her only two friends had been sexually abused and that she had worked in the State Attorney's Office assisting in the prosecution of sexual abuse cases (ECF No. 972 at 14).

Defendant's assertions about the court's "refusal" to strike jurors for cause are not supported by the record.   Contrary to his assertion, a defense attorney may move to strike a juror for cause, and in fact attorney Clinton Couch made such a challenge (ECF No. 758 at 68–70).   The court merely advised counsel that it would count the challenge for cause as one of the 14 challenges allotted to the defense (ECF No. 758 at 70).   Thus, Defendants as a group received more challenges than the ten challenges allotted by Rule 24(b)(2) of the Federal Rules of Criminal Procedure, and there was no operative difference between a challenge for cause and a peremptory challenge.   Despite Defendant's complaint, the record reflects that each of the jurors described above was stricken by the defense (ECF No. 758 at 71–75).   Furthermore, the undersigned notes that the Defendants as a group did not exhaust their 14 challenges (ECF No. 758 at 75–76), and thus there were qualified venire persons remaining after jury selection was complete.   Defendant has not shown either that

the jury ultimately empaneled was biased or that the outcome of the proceedings would have been different with a larger venire, and he is not entitled to relief on this ground.

Within Ground 54, Defendant contends that the district court improperly asserted a belief in the "Good Book," thus suggesting that the jury should follow "the morals of that Book rather than the proper laws of Congress" (ECF No. 1040 at 46). The reference in question actually occurred during jury selection, while the court was explaining the standard of proof required in a criminal case, proof beyond a reasonable doubt. The court stated "To use an example, our scientists continue to tell us that for over five billion years the sun has been coming up every day, and that suggests to me that it is probably reasonable to expect that the sun will rise tomorrow. On the other hand, those of us who believe in the Good Book know that it says one day that sun will not rise, and that also could be tomorrow." (ECF No. 758 at 38). The court went on to explain that a possible doubt about the sun not coming up the next day was not a reasonable doubt, and then asked the jurors whether they would require proof beyond any doubt before they were willing to return a verdict of guilty. This single isolated reference to the "Good Book" cannot reasonably be construed as the court telling the jury "to judge the defendants according to conservative Christian thinking, not the laws of the United States" (ECF

No. 1040-1 at 64).   Nor is it proof that "law was ignored in favor of religious morality" (ECF No. 1116 at 35).   It did not contaminate the venire panel or render the resulting jury constitutionally infirm.   Defendant also notes that the court, while introducing Ms. Mary Maloy, Deputy Clerk in charge of paperwork, commented "I always add a thank you, amen to that" (ECF No. 720 at 7).   His suggestion that such comments are "nothing short of grooming the jury pool towards the judge's way of Christian thinking" is conclusory.   No relief is warranted on these claims.

9.   Improper Closing Argument

Defendant argues in Ground 45 that the prosecutor's closing argument and rebuttal were improper and violated his constitutional rights and that the district court should have granted a mistrial.   The propriety of remarks made during the prosecutor's closing argument was addressed on appeal, and Defendant joined co-Defendants McGarity, Lakey, Lamber, and White in contending that a mistrial was warranted.   McGarity, 669 F.3d at 1245.   Notably, the Eleventh Circuit agreed that some comments made by the prosecutor during his closing were improper, but found the comments did not prejudice the substantial rights of the Defendants in light of the overwhelming evidence against them.   *Id.* at 1245–47.   No relief is warranted.

10.  Infirmity of Jury Instructions

In Claims 46 and 47, Defendant challenges the jury instructions in his case. First he asserts that the court ignored a defense request for a unanimity instruction. Second, he claims that the instruction on aiding and abetting was improper.

A unanimity instruction was required as to Count 1 to ensure that the jury convicted each Defendant based on the same three predicate offenses.   On appeal, Defendant challenged the lack of unanimity instruction and the Government conceded that same was required.   The appellate court found, however, that the failure to include the instruction was harmless error.   The Eleventh Circuit noted that each of the Defendants, with the exception of defendant White, was convicted of three predicate CEE offenses, to wit, advertising child pornography and transportation of child pornography, as well as conspiracy, and that conspiracy remained a valid predicate offense notwithstanding the fact that it had been vacated as a lesser included offense.   McGarity, 669 F.3d 1250–51 n.45.   Because this issue was resolved on appeal, no further discussion is warranted.

Defendant argues in Ground 46 that the failure to provide a unanimity instruction on the substantive counts, as requested by his attorney, violated his constitutional rights.   In response, the Government notes merely that the court utilized pattern instructions (ECF No. 469).   Defendant argues that because the

Government presented evidence of multiple advertisements, transports, and receipts of child pornography, a unanimity instruction was required to ensure that the jurors unanimously agreed on which act or acts formed the basis for each conviction. Defendant's suggestion that, had such an instruction been given, the outcome of the proceedings would have been different, is purely speculative.  He has not shown that his substantial rights were affected, and he is not entitled to relief.  *See* United States v. Weiss, 539 F. App'x 952, 956–57 (11th Cir. 2013).

Defendant alleges in Ground 47 that the jury was improperly instructed on aiding and abetting.  Charging a defendant with aiding and abetting permits the Government to charge an accomplice as a principal, "even though all of the elements of the substantive offense could not be proven against the accomplice."  United States v. Sellers, 871 F.2d 1019, 1022 (11th Cir. 1989); United States v. Broadwell, 870 F.2d 594, 607–08 (11th Cir. 1989).  Furthermore, a defendant can be found guilty as an aider and abettor regardless of whether he was specifically charged as such in the indictment.  Broadwell, 870 F.2d at 607.

The propriety of the aiding and abetting instruction was thoroughly discussed during the jury charge conference, with one defense attorney taking the position that the Government's decision to charge the Defendants in separate counts of the indictment meant that they waived the ability to pursue aiding and abetting liability

because a lone defendant could not aid and abet himself (ECF No. 724 at 69–73).
After the court indicated its intent to give the standard aiding and abetting
instruction, counsel for co-Defendant Freeman objected to the instruction except as
to Count 40 (ECF No. 724 at 126–27, 134).   The Government noted that the aiding
and abetting instruction could be read in any case.   The court found it to be proper
and included the instruction (ECF No. 724 at 135).   An issue such as this that was
fully developed could have been raised on appeal.   In any event, Defendant has not
shown that inclusion of this instruction violated his constitutional rights.

11.   <u>Infirmity at Sentencing</u>

Defendant complains of multiple issues surrounding his sentencing, at which
he was represented by Gary Printy (ECF No. 812).   Counsel adopted the objections
made by other Defendants to preserve the issues for appeal, objected to the
guidelines calculations contained within paragraphs 83 through 97 of the PSR, and
made numerous other objections to matters contained within the PSR.   The court
overruled or "noted" all of the objections and listened to Defendant's statement in
allocation before imposing sentence (ECF No. 812 at 3–32).   The court also
specifically noted that it would have imposed the same sentences upon Defendant
without regard to the correctness or incorrectness of the rulings made with regard to
the presentence report (ECF No. 812 at 37).

Sentencing issues are typically not cognizable on collateral review, and Defendant attempts to cloak his claims in constitutional terms in an attempt to obtain relief.    In Grounds 48, 49, and 50, he complains of alleged errors in the PSR. Specifically, he claims that the facts contained therein and the enhancements based upon these facts were not supported by trial evidence.    "Under an advisory guidelines regimen, judicial fact-finding about relevant conduct that supports a sentence within the statutory maximum set forth in the United States Code does not violate the Sixth Amendment"   United States v. Belfast, 611 F.3d 783, 827 (11th Cir. 2010) (citing United States v. Booker, 543 U.S. 220, 233 (2005)). Furthermore, the court specifically noted that the sentences would have been the same regardless of any errors in the PSR (ECF No. 812 at 37).

In Ground 51, Defendant contends that the court based his sentences "largely on his decision to seek a jury trial rather than the facts and evidence presented."    As proof thereof, he notes that co-conspirators who pleaded guilty received sentences at or below the bottom of the applicable guideline ranges.    A defendant who pleads guilty typically receives credit for acceptance of responsibility, and one who provides substantial assistance to law enforcement either before or after sentencing will generally receive a significant reduction in his or her sentence.    There is nothing legally improper about this.    The fact that defendants who cooperate

receive benefits does not mean that those who exercise their right to go to trial are "punished"—rather they receive a sentence within the parameters set forth by the sentencing guidelines and applicable statutes.

Defendant's complaint about his sentence on Count 2 in Ground 52 is moot in light of the fact that the Eleventh Circuit vacated his conviction on this count.

Defendant's assertion in Ground 53, that he should not have received a separate sentence on Counts 1, 12, and 22 because the latter two offenses were "lesser-included offenses," is also without merit.   In any event, because the sentences were imposed to run concurrently, there is no practical effect on Defendant's sentence.

### 12.  District Court Bias and Error

In Grounds 54, 55, and 65, Defendant contends that the district court abused its discretion during trial, allowed personal and religious biases to infect the trial, and failed to instruct the jury on venue.   The majority of the errors of which Defendant complains are discussed *supra*, as relating to separate grounds for relief. Jurisdiction was proper in this case, the jury venire was not constitutionally inadequate, and no instruction on venue was legally required. Defendant's suggestion that the court made improper rulings on admission of evidence or objections posed by the parties is unfounded.   There is no merit to his assertion that

the district court abused its discretion in allowing the testimony discussed in Grounds 35, 36, 38, 41, and 44; the subpoena evidence as discussed in Ground 34; or the attorney work-product summaries as discussed in Ground 37.   Finally, there is no legal authority to support his suggestion that the court was required to "pre-screen potentially prejudicial images and videos to weigh their probable effect on the jury," and this is not a basis for relief.

Defendant's suggestion that the district court has a "personal bias favoring children" that impacted the court's rulings in this case is spurious.   The court's "religious comments" did not affect, as Defendant claims, his right to freedom of religion, separation of church and state, or his right to a fair trial.

### 13. Eleventh Circuit Court of Appeals Abuse

In Grounds 58, 60 through 63, and 77, Defendant challenges various actions of the Eleventh Circuit Court of Appeals.   Specifically, he alleges that the appellate court abused its discretion by allowing Senior District Judge Roger Vinson, a colleague of trial court Judge Lacey Collier, to sit on the panel in this appeal. Defendant presumes bias by Judge Vinson due to the fact that Judges Vinson and Collier have been "friends and colleagues for many years."   Defendant further claims that the appellate court failed to follow its own and Supreme Court precedent by failing to establish that it had jurisdiction over the appeal, by declining to consider

the impact of issues it identified as meritless on other Defendants, and finally in

holding that it was bound by prior precedent.    Assertions of error by the appellate

court are not cognizable in this proceeding.    Defendant filed a petition for writ of

certiorari, the proper method for challenging the Eleventh Circuit's decision, but the

United States Supreme Court denied the petition.    Mumpower v. United States, 133

S. Ct. 551 (2012).

    14.  Infirmity of Defense Expert

In Ground 74, Defendant contends that the Government paid for him to hire

Richard Greene as an expert witness to testify in behalf of the defense but that Mr.

Greene "disappeared to parts unknown during the trial leaving Mumpower without

anybody to testify to technical facts on his behalf" (ECF No. 1040 at 54).    The

Government notes that in addition to the procedural bar that would apply to this

claim, to its recollection, the defense expert did not testify because there was no

legitimate forensic defense theory.    The Government further states that it "invites

the Defendant to request an affidavit from said expert in order to opine as to what

his testimony may have been" (ECF No. 1085 at 35).    In his reply Defendant

requested permission to "present the expert witness with an affidavit either pro se,

or as part of discovery through an appointed attorney" (ECF No. 1116 at 40), but he

again offered nothing but speculation that the witness might have any favorable

evidence, and he has not provided any supplementary evidence in this regard during the time the instant motion has been pending.    As such, he has not shown a violation of his constitutional rights.

    15.  Infirmity of Statute

    Defendant contends in Ground 79 that defining "sexually explicit conduct" in part as "graphic or simulated lascivious exhibition of the genitals or pubic area of any person" as is done in 18 U.S.C. § 2256(2)(B)(iii), is "unconstitutionally overbroad as applied and as written, has a chilling effect on free speech." Defendant complains that an individual who possesses images of something believed to be legal risks being jailed and ruining their finances and reputation for exercising their First Amendment rights.    It is well settled that child pornography is not entitled to First Amendment protection.  *See* New York v. Ferber, 458 U.S. 747 (1982); Ashcroft v. The Free Speech Coalition, 535 U.S. 234 (2002).   A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."   United States v. Williams, 553 U.S. 285, 304 (2008); United States v. Woods, 684 F.3d 1045, 1057 (11th Cir. 2012); United States v. Wayerski, 624 F.3d 1342, 1347 (11th Cir. 2010).   A statute is facially overbroad if it prohibits a substantial amount of protected speech "relative to the statute's plainly

legitimate sweep."   <u>Woods</u>, 684 F.3d at 1057 (quoting <u>Williams</u>, 553 U.S. at 292).

Defendant offers no legal support for his argument that the definition of lascivious

exhibition is vague or overbroad, and this claim thus fails.

Defendant also raises a factual challenge to items presented at trial.   He

asserts that certain trial exhibits that the Government contends are child

pornography, such as WM-1, WM-11A and WM-7, actually have "legal" content.

In response, the Government notes that trial exhibit WM-1 was not offered as child

pornography, but rather as an electronic text posting used to trace Defendant's

identity.   Exhibit WM-11A was also a text posting published to the jury in

conjunction with images associated with the posting for the jury to make a

determination as to whether child pornography was present.    There is no basis for

relief.

16.   <u>Ineffective assistance of Trial Counsel (Attorney E. Brian Lang)</u>

Defendant raises twenty grounds alleging ineffective assistance of trial

counsel (*see* Grounds 2, 4, 5, 7, 10, 12, 14, 17, 21, 23, 25, 31, 56, 57, 67–69, 73, 75,

76.   The vast majority of the underlying substantive claims have been discussed

above and shown to be without merit.   Counsel is not constitutionally ineffective

for his failure to raise a meritless claim.   <u>Denson v. United States</u>, 804 F.3d 1339,

1342 (11th Cir. 2015) (citing <u>Freeman v. Attorney General, Florida</u>, 536 F.3d 1225,

1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel);   Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has

never been sustained because such a motion would not have been successful).

Thus, any such assertions do not entitle Defendant to relief.

In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence

solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992);

Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A

defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Defendant faults virtually every aspect of counsel's performance.  He asserts that counsel failed to protect his rights pre-trial because he did not file his own pretrial motions, but rather rode "on the coattails of other attorneys" and that counsel failed to investigate his case and to view the images and videos with his client. (Grounds 2, 4, and 31).  Adopting the motions of co-defendants is not an unconstitutional litigation strategy and does not render counsel's performance constitutionally deficient.  The Government submits that defense counsel reviewed discovery, and has submitted a letter dated December 16, 2008, addressed to defense counsel, confirming same (ECF No. 1085, Exh. B).

In Ground 5, Defendant assails the Federal Public Defender in Spokane, Washington for his failure to argue against extradition on the basis that this court lacked jurisdiction over Defendant.  Assuming that such a challenge is procedurally proper, there is no legal merit to it.  Both jurisdiction and venue were proper in this court, and neither the Washington attorney nor Defendant's trial attorney were constitutionally ineffective for failing to raise these challenges (*see also* Ground 7).

In Grounds 10, 12, 14, 17, 21, 23, and 25, Defendant challenges counsel's performance at trial.   He alleges as to several of the charges against him that counsel failed to properly cross-examine or impeach certain witnesses to establish his innocence of the charges (e.g., Grounds 10, 12, 23).   Defendant was present with counsel at trial and does not appear to have raised these issues with his attorney at the time.   Furthermore, in light of the "overwhelming" evidence presented at trial, Defendant has not shown that the outcome of the proceedings would have been different had counsel pursued these lines of questioning.   Defendant faults counsel for failing to file motions for judgment of acquittal and for judgment notwithstanding the verdict, and for failing to move for a venue instruction or to challenge an alleged variance, but he has not shown prejudice because such motions were unsustainable (e.g. Grounds 14, 17).   Grounds 21 and 25 relate to Counts 2 and 40 which were overturned on appeal.   Thus, even if counsel was constitutionally ineffective with respect to these grounds, there was no prejudice.

In Grounds 56 and 57, Defendant claims that counsel was ineffective because he failed to move that the entire jury pool be excused because it was tainted by the religious comments of the court, or for his failure to file a motion seeking Judge Collier's recusal due to alleged religious and personal biases.   Defendant's claim that the jury pool was tainted because of the court's reference to the Good Book is

without merit, as discussed above.   Thus counsel was not constitutionally ineffective for failing to make the suggested motion.

With respect to the latter claim, Title 28 U.S.C. § 144 governs recusal of a judge.   That statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.   A party may file only one such affidavit in any case.   It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.   In the Eleventh Circuit, 28 U.S.C. §§ 144 and 455 must be construed in pari materia.   *See* Parrish v. Bd. of Com'rs of Ala. State Bar, 524 F.2d 98, 102–03 (5th Cir. 1975).[3]   Section 455 provides:

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

(a) any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

28 U.S.C. § 455(a, b(1)).   Under § 455(a), the standard is objectively based on whether a reasonable individual could conclude based on all the facts that the judge's impartiality could be questioned, that is, whether the facts establish that the appearance of partiality exists.   *See id.* § 455(a); Jaffree v. Wallace, 837 F.2d 1461, 1465 (11th Cir. 1988).   Whereas, § 455(b), like § 144, requires a showing of actual partiality.   *See* Hoffman v. Caterpillar, Inc., 368 F.3d 709, 718 (7th Cir. 2004) (unlike motion under Section 455(a), which simply requires reasonable appearance of bias, motion under Section 144 requires showing of actual bias, which only personal animus or malice on part of judge can establish).   In either case, the moving party must allege facts supporting his contention; thus, he must allege facts from which a reasonable person could conclude that the judge's impartiality could be questioned, or facts that establish that a particular ground for disqualification actually exists.   Additionally, bias sufficient to disqualify a judge must be personal rather than judicial unless the judicial conduct "reveal[s] an antipathy . . . intense

enough to make fair judgment impossible." Onishea v. Hopper, 126 F.3d 1323, 1340, (11th Cir. 1997), *vacated on other grounds*, 133 F.3d 1377 (11th Cir. 1998); *see also* First Alabama Bank of Montgomery v. Parsons Steele, 825 F.2d 1475 (11th Cir. 1987); United States v. Meester, 762 F.2d 867, 884–85 (11th Cir. 1985).   It is no basis for disqualification that the judge simply ruled adversely to the movant's cause.   *See* United States v. Chandler, 996 F.2d 1073, 1104 (11th Cir. 1993); McWhorter v. City of Birmingham, 906 F.2d 674, 678–79 (11th Cir. 1990); Jaffe v. Grant, 793 F.2d 1182, 1188–89 (11th Cir. 1986).

Defendant argues that Judge Collier's public support of children and his advocacy for children as demonstrated by his sponsorship of the Lacey A. Collier Snoezelen Sensory Complex at the Escambia Westgate School is proof of his personal bias (*see* ECF No. 1040-2 at 72).   This speculative argument is woefully insufficient to show personal bias on the part of Judge Collier or that his impartiality might reasonably be questioned, and it provides no basis for recusal under any of the standards set forth above.   Counsel was not constitutionally ineffective for failing

to file a motion to recuse Judge Collier, as there was neither a factual nor a legal basis for such a motion.

In Grounds 67 and 68, Defendant asserts that trial counsel was ineffective because he failed to ensure that the Government had provided all images and videos he needed to prepare for trial and that counsel failed to take an adversarial stand on the Government's actions discussed in Grounds 26 through 29, and 32 through 47, discussed above.   Because these grounds were found to lack substantive merit, counsel was not constitutionally ineffective for his failure to assert them.

In Grounds 69 and 73, Defendant contends that counsel was constitutionally ineffective at sentencing. As noted above, the court explicitly stated that it would have imposed the same sentences upon Defendant without regard to the correctness or incorrectness of the rulings made with regard to the PSR (ECF No. 812 at 37). As such, counsel's performance cannot be deemed constitutionally ineffective.

Defendant's assertion in Ground 75 that counsel was ineffective because he failed to request a bench warrant to bring in the purported expert witness, Mr. Greene, is without merit.   He has not shown any prejudice from counsel's failure to do this.   Moreover, as noted above, the recollection of counsel for the

Government is that Mr. Greene, after review of the evidence, was not called as an expert because he could not assist in a defense.

In Ground 76, Defendant contends that counsel was constitutionally ineffective because he abandoned Defendant at a critical stage of the trial by failing to put on any defense.   Even if, as Defendant seems to suggest, many of the images traded by the enterprise contained legal content, it was the illegal content that was the target of the instant prosecution.   This defense, to the extent it was mounted by the other co-conspirators was rejected by the jury in light of the overwhelming evidence presented to it.   The fact that Defendant's counsel did not affirmatively present a defense is in many circumstances the most reasonable defense strategy, and not a constitutional failing.   What is more, through his closing argument, counsel reminded the jury about the parameters of the charges and suggested that Defendant's conduct likely fell outside that time period.   Counsel suggested that the Government had failed to prove Defendant was actually responsible for posts made under his nickname and offered a concrete example of someone else posting under Defendant's online identity.   He reminded the jury several times take their time to consider any reasonable doubts they had about the case.   (*See* ECF No. 760 at 72–83).   Mr. Lang conceded that Defendant might have had some "bad stuff" at his

house, but argued to the jury that it was not within the parameters of the charged conspiracy.   A lawyer who makes a concession that his client may be guilty of some wrongdoing, but not the specific charges, makes a strong appeal to the jury's sense of reason.   In this case, the strategy may not ultimately have been successful, but it was not unreasonable or constitutionally ineffective.

17.   Ineffective Assistance of Appellate Counsel

Defendant raises seven grounds for relief that are directly related to the performance of appellate counsel (Grounds 3, 59, 64, 70, 71, 73, and 78).   He contends generally that appellate counsel provided constitutionally deficient assistance in preparing the direct appeal, failed to pursue claims that Defendant wanted pursued on appeal, and failed to pursue removal of District Judge Roger Vinson from the appellate panel who reviewed his case.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–27 (2009); Jones v. Barnes, 463 U.S. 745, 751–52

(1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.   Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith).   "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   Barnes, 463 U.S. at 751–52.   In fact, this is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986).   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that counsel's performance, which must be judged in its entirety, was effective.   *Id.*; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).   Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.   Brown v. United

States, 720 F.3d 1316, 1335 (11th Cir. 2013); Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1311 (11th Cir. 2008); United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Defendant's appellate attorney adopted arguments made by co-Defendants in their briefs, as well as making arguments relevant only to Defendant, including a challenge to the introduction of evidence regarding Defendant's past sexual abuse of children.   A review of the thorough appellate opinion in this case, which resulted in two counts of conviction being vacated, does not suggest ineffective appellate advocacy in this case.   The Eleventh Circuit found several arguments Defendant raised to be significant enough to warrant discussion, although they were ultimately decided adversely to him after the court found either no error or harmless error.   *See, e.g.,* McGarity, 669 F.3d at 1237–38, 1240–42, 1245–47, 1247–51, 1255–57. Furthermore, as evidenced by the discussion in the foregoing sections, Defendant did not have any other issues of arguable merit, much less any sure fire winners. His suggestion that appellate counsel should have raised up to a dozen additional issues on appeal in the limited space allotted is simply unreasonable.   As noted by the Eleventh Circuit in its orders denying Defendant's motion to proceed pro se, "it

is counsel's obligation, not Appellant's, to determine the meritorious issues to be raised on appeal" (citing United States v. Burke, 257 F.3d 1321 (11th Cir. 2001)), and a defendant "does not have a constitutional right to compel counsel to press nonfrivolous points if counsel, as a matter of professional judgment, decides not to present those points" (ECF No. 1116-1 at 26–27, 41).  Defendant has not shown that appellate counsel's performance, taken as a whole, was constitutionally ineffective, given the confessions and the "overwhelming" evidence presented at trial.  McGarity, 669 F.3d at 1231, 1242–43, 1246.

As a final note, the undersigned addresses Defendant's contention that Senior District Judge Roger Vinson was somehow biased against him, merely due to the fact that he sits in the same court as Senior District Judge Lacey Collier, the trial judge in this case.  Defendant has not shown that counsel was constitutionally ineffective for his failure to move to recuse Judge Vinson from the appellate panel. His assertion of bias is utterly conclusory.  Furthermore, in light of the repeated conclusion by the Eleventh Circuit that the evidence in this case was overwhelming, Defendant cannot show that the result of the appellate proceeding would have been different had counsel filed a motion for Judge Vinson's recusal and had such a motion been granted.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 1040) be **DENIED**.

.    2.    A certificate of appealability be denied.

At Pensacola, Florida, this 20<u>th</u> day of October 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.